UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BARLOVENTO, LLC,

    Plaintiff/Counter-Defendant,

v.                                                           Civ. No. 18-1112 GJF/JHR

AUI, INC.,

    Defendant/Counterclaimant, and

WESTERN SURETY COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants AUI, Inc. and Western Surety Company's "Motion for Leave to File Amended Answer, Affirmative Defenses, and Counterclaims" [ECF 190] ("Motion"). The Motion is fully briefed. *See* ECFs 192 (Response), 193 (Reply). For the following reasons, the Court will **DENY** Defendants' Motion.

**I.  BACKGROUND**

This case involves a contract dispute between Plaintiff, which was hired as the prime contractor to replace a 2,225-foot taxiway at Kirtland Air Force Base, and Defendant AUI, Inc., which Plaintiff hired as a subcontractor to perform the "lion's share" of the work. ECF 88-1 at 9. Plaintiff alleges that it properly terminated Defendant AUI because AUI failed to remedy its "material breach" of the contract. *See* ECF 1 at 1-8. AUI disputes these allegations and alleges, among other things, that Plaintiff itself breached the contract by not acting in "good faith" and by wrongfully terminating AUI. *See* ECF 32 at 7- 20.

The sole issue in the Motion is whether the Court should grant Defendants' request, filed six months after the close of discovery, to amend their pleadings. Mot. 1, 23.

## II. PERTINENT FACTS

After a three-week extension of time to respond to Plaintiff's Complaint, *see* ECFs 1, 20, AUI filed its Answer [ECF 32] on February 25, 2019. In this pleading, AUI denied breaching the contract and set forth several affirmative defenses, including the assertion that Plaintiff's claim was barred because Plaintiff breached the contract. Answer [ECF 32] ¶¶ 2-3, 31-35, p. 6. This Answer also included a Counterclaim, which alleged that Plaintiff was liable for (1) "Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing" and (2) "Conversion of Wrongful Termination for Default to Termination for Convenience." Countercl. [ECF 32] ¶¶ 50-65.[1]

In March 2019, the Court issued its scheduling order, which required Defendants to amend their pleadings by June 3, 2019. ECF 36 at 2. At the end of May 2019, the parties requested that the Court extend certain discovery deadlines—but not Defendants' deadline to amend their pleadings. *See* ECFs 51-52 (Court granting request). Although Defendants sought (and received) extensions for responding to a discovery request and filing their pretrial motions, *see* ECFs 46, 79-81, they never sought to amend their pleadings until the middle of April 2020—six months after the close of discovery and ten months after their amended pleading deadline. *See* ECFs 52, 190.

Defendants' Motion now seeks to amend AUI's Answer to include, *inter alia*, an assertion that "the termination [of AUI] for default was in bad faith." Proposed Answer [ECF 190-2] ¶¶ 3, 20. Defendants also seek to assert the additional affirmative defenses of "Waiver or Forbearance," "Unclean Hands/Bad Faith/Equitable Estoppel," and "First Breach," and to further explain their existing defenses. Proposed Defenses [ECF 190-2] at pp. 6-9.[2] Lastly, Defendants seek to amend

---

[1] AUI's Counterclaim also included a third count, but the Court dismissed this count when it granted Plaintiff's motion for summary judgment as to this count. *See* ECF 131 n.1 (Clerk's Minutes from Hearing on Pending Motions on February 12, 2020).

[2] The proposed "Waiver or Forbearance" defense includes the assertions that Plaintiff should have "re-establish[ed] time as of the essence" and that Plaintiff "wrongfully terminated [AUI] for default on December 5, 2017, as a pretext for its own material breach of contract on December 1, 2017." *Id.* at p. 6. The proposed "Unclean Hands/Bad

2

AUI's Counterclaim by overhauling its existing "Facts" section,[3] expanding the existing two counts to include additional (and revised) factual assertions (along with minor updates to the legal assertions in Count I), and adding two entirely new counts: (1) "First Material Breach" and (2) "Bad Faith Default Termination." Proposed Countercl. at pp. 11-53.

## III. APPLICABLE LAW

Under the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation [within the pleading] must be simple, concise, and direct." Fed. R. Civ. P. 8(a),(d). After an initial 21-day window to "amend its pleading once as a matter of course," a party may "amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). If amending a pleading would change the court's scheduling order, however, then "[the] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

In addressing these requirements, the Tenth Circuit has held that "[a] party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989-90 (10th Cir. 2019) (citing *Birch v. Polaris Indus.*, Inc., 812 F.3d 1238, 1247 (10th Cir. 2015)). "Thus, if the movant fails to show good cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis, i.e., whether the movant has satisfied the requirements of Rule 15(a)." *Id.* at 990 (quotations and alterations omitted). "In practice," showing good cause under Rule 16(b) "requires

---

Faith/Equitable Estoppel" defense includes a number of assertions, including that before terminating AUI, Plaintiff's Operations Manager had already intended to replace AUI with AUI's competitor. *Id.* at pp. 7-8; *see also* Proposed Countercl. [ECF 190-2] ¶ 119. The proposed "First Breach" asserts that because Plaintiff was "the first to commit a material breach," Plaintiff is "barred from enforcing the remainder of the contract." Proposed Defenses at p. 9.

[3] *See*, *e.g.*, Countercl. at pp. 7-15; Proposed Countercl. at pp. 11-40 (increasing the number of paragraphs in the "Fact" section from 44 to 138).

3

the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* at 988 (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). "Good cause" also "obligates the moving party to provide an adequate explanation for any delay." *Id.* (quoting *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018)). "Rule 16's good cause requirement *may* be satisfied, for example, if [the movant] learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240 (emphasis added). If, however, the movant "knew of the underlying conduct but simply failed to raise [its] claims," *Husky Ventures*, 911 F.3d at 1020 (alteration in original) (quoting *Birch*, 812 F.3d at 1247), then "the claims are barred." *Gorsuch*, 771 F.3d at 1240.

Under the Rule 15(a) standard, "[a] court may deny leave [to amend] . . . on account of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'" *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (third and fourth brackets in in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (observing that "[i]t is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay" (citations omitted)).

Finally, the Tenth Circuit will only "review a denial of leave to amend a complaint for abuse of discretion." *Tesone*, 942 F.3d at 989 (quotations omitted); *see also Bylin v. Billings*, 568 F.3d 1224, 1229-31 (10th Cir. 2009) (affording "wide discretion" to district courts' application of

Rules 15 and 16 and noting that "[a] district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable" (quotations omitted)).

IV. ANALYSIS

    **A. Defendants Have Failed to Show Good Cause under Rule 16(b)**

In addressing Defendants' proposed counterclaims, the Court finds that they "knew of the underlying conduct but simply failed to raise [their] claims." *Husky Ventures*, 911 F.3d at 1020.

With respect to AUI's proposed "First Material Breach" counterclaim, the Court observes that AUI already pled—both as an affirmative defense and as a counterclaim—that Plaintiff breached the contract. ECF 32 at pp. 6, 16-17. And while the proposed "First Material Breach" clarifies Plaintiff's alleged breach as being "first" and "material"—and essentially incorporates *additional evidence* of such breach[4]—AUI was already well aware of the general underlying conduct (i.e., Plaintiff's alleged non-compliance with the contract). *See id.*; *see also* Countercl. ¶ 51 (AUI alleging that the acts comprising Plaintiff's breach included—"but [were] not limited to"—those specifically enumerated by AUI). Furthermore, AUI was aware of the precise conduct underlying this proposed "First Material Breach" counterclaim. Specifically, this counterclaim alleges that Plaintiff breached the contract by not providing "an approved concrete mix proportioning study," Proposed Countercl. ¶ 177—but AUI already knew that "[p]rior to AUI's termination, [Plaintiff's] concrete mix was not approved." Answer ¶ 29; *see also* Reply 6 n.3 (AUI conceding that "[a]n appropriate jury instruction could obviate the need for [AUI's] standalone first-breach cause of action").

---

[4] *E.g.*, that "[Plaintiff] knew that its concrete mix proportioning study had been disapproved on December 1, 2017." Proposed Countercl. ¶ 178.

With respect to AUI's proposed "Bad Faith Default Termination" counterclaim, the Court observes that AUI already alleged in its Counterclaim that Plaintiff breached the contract through both an absence of "good faith" and a "wrongful" default termination. Countercl. at pp. 16-17. In addition, although this proposed counterclaim incorporates *additional evidence*,[5] AUI was already aware of conduct underlying such an alleged bad faith termination—including Plaintiff's alleged favoritism towards AUI's competitor (Answer ¶18; Countercl. ¶¶ 45-47, 67-69), Plaintiff's failure to obtain an approved concrete mix (Answer ¶ 29), and Plaintiff's alleged failures to seek time extensions or to protect AUI's interests (Answer ¶¶ 10, 18; Countercl. ¶¶ 18, 19, 21, 25, 29, 36, 39, 43, 47, 58-63).

Because Defendants already knew of the underlying conduct, the Court finds that they cannot "provide an adequate explanation for [their] delay," *Tesone*, 942 F.3d at 988, and thus holds that Defendants have failed to show good cause under Rule 16(b) for failing to raise these counterclaims. Consequently, "the claims are barred." *Gorsuch*, 771 F.3d at 1240.

### B. Defendants Have Not Satisfied the Requirements of Rule 15(a)

Because the primary purpose of Defendants' amended pleading seems to be to assert the new counterclaims—i.e., claims that the Court has now barred—the Court likely could hold that Defendants have failed to show good cause under Rule 16(b) for their *entire* amended pleading, thus ending the Court's analysis. *Tesone*, 942 F.3d at 990. Nevertheless, to ensure that Defendants' entire pleading is addressed, the Court briefly addresses "the second step of the analysis, i.e., whether [Defendants] [have] satisfied the requirements of Rule 15(a)." *Id.* at 990.

First, the Court has no reason to doubt that counsel on both sides have been professional, zealous, and diligent in representing their respective clients in this lawsuit, which has demanded

---

[5] *E.g.*, evidence that, before AUI was terminated, Plaintiff's Operations Manager had already intended to replace AUI with AUI's competitor. Proposed Countercl. ¶¶ 119, 183.

significant work by both sides since its filing in November 2018.[6]  With respect to Defendants' proposed responsive pleading, however, the Court finds that not seeking to amend it until six months after discovery—and over ten months after the court's deadline to amend—qualifies as "undue delay."  *Hasan*, 935 F.3d at 1101; *see also Frank*, 3 F.3d at 1365-66 (10th Cir. 1993) (upholding a  district court's denial of a motion to amend when the motion was "filed four months after the court's deadline" and "Plaintiffs knew or should have known long before that date" of the applicable underlying facts—but observing that "untimeliness alone is a sufficient reason to deny leave to amend").  Second, the Court finds that allowing Defendants to amend their pleadings at this stage would cause "undue prejudice," *Hasan*, 935 F.3d at 1101, including by requiring Plaintiff to now address additional counterclaims—claims that (1) could have been timely brought and thus more efficiently addressed by Plaintiff, *see supra* Section IV(A), and (2) ultimately might be of no consequence, *see infra* note 7.  Third, although the Court need not find that permitting the amended pleading would amount to an act of "futility," *Hasan*, 935 F.3d at 1101, the Court does question the amended pleading's usefulness.[7]

---

[6] Plaintiff, in its Response brief, asks this Court to award Plaintiff "reasonable attorneys' fees" for responding to what it characterizes as Defendants' "untimely and disingenuous" Motion.  Resp. 1.  The Court, however, will summarily deny this request—as the Court does not find that Defendants' Motion (though ultimately unsuccessful) was filed in bad faith.  *See Chambers v. NASCO*, Inc., 501 U.S. 32, 42-46 (1991) (discussing a court's power "assess attorney's fees as a sanction for bad-faith conduct in litigation," such as when a party "hamper[s] enforcement of a court order" or when a court finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled" (quotations omitted)).

[7] For instance, the Court is not convinced of the *practical significance* of the proposed amendments to AUI's Answer, the proposed additions and updates to the affirmative defenses, the nearly 100 proposed new paragraphs to the Counterclaim's "Facts" section.  *See* Mot. 1-25, Reply 1-13.  In addition, although the Court is not ruling on the issue at this time, Defendant's proposed "First Material Breach" counterclaim may be subsumed within its original "Breach of Contract" counterclaim or, as Defendants suggest, obviated by an appropriate jury instruction.  *Id.* at 6 n.3.  Finally, Defendants' proposed "Bad Faith Default Termination" counterclaim is based on the "federal law of government contracts," which only applies to the contract's "validity, interpretation, and performance" and thus might not apply as a remedy, particularly one that might contradict the contract's express terms.  *See* Reply 7-8; ECF 88-3 (contract) at 18, 22.  Furthermore, such a claim would still not entitle Defendants to the requested relief of attorney's fees.  *See Bowles v. United States*, 144 Fed. Cl. 240, 253 (2019); *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 370 (2019) (discussing the "the bedrock principle known as the American Rule" in which "[e]ach litigant pays his own attorney's fees, win or lose, unless a *statute* or *contract* provides otherwise" (emphasis added) (quotations omitted)).

In light of the foregoing, the Court holds that Defendants have not satisfied the requirement of Rule 15(a).

**IT IS THEREFORE ORDERED** that Defendants' Motion is **DENIED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*