UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BARLOVENTO, LLC,

    Plaintiff/Counter-Defendant,

v.                                                        Civ. No. 18-1112 GJF/JHR

AUI, INC.,

    Defendant/Counterclaimant, and

WESTERN SURETY COMPANY,

    Defendant.

**ORDER ON DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO THE PROJECT BEING "MISSION CRITICAL"**

THIS MATTER is before the Court upon the above-captioned motion in limine [ECF 129] ("Motion"). The Motion is fully briefed.[1] For the reasons that follow, the Court will **GRANT** the Motion to the extent that Plaintiff's counsel will be required to obtain a ruling outside the jury's presence at trial before eliciting evidence or making argument that the United States Air Force considered the taxiway repaving project in question to be "mission critical."

**I.  BACKGROUND**

Defendants seek to exclude "evidence relating to [Plaintiff's] assertions that the project that is the subject of this dispute was a 'mission critical' project." ECF 129 at 1. Defendants advance three primary arguments. First, they assert that any such testimony would be inadmissible hearsay to the extent that Plaintiff's witnesses testify about what they heard or read from Air Force personnel. *Id.* at 2. Defendants next contend that the "mission critical" label does not exist in the

---

[1] *See* ECFs 156 (response), 172 (reply). At the hearing on October 1, 2020, the Court permitted Plaintiff to supplement its proposed jury instructions to address evidence that Plaintiff intends to introduce at trial that certain witnesses thought the project at issue was "mission critical." *See* ECFs 202 (clerk's minutes) at 3; *see also* ECFs 208 (Plaintiff's proposed supplemental jury instruction and brief in support); 210 (Defendants' objection thereto).

Federal Acquisition Regulation applicable to the project and did not appear in any of the prime or subcontract documents relevant to this case. *Id.* at 3-4. Defendants conclude by invoking Federal Rule of Evidence 403, emphasizing that whatever marginal probative value the "mission critical" description might have would be substantially outweighed by the danger that such a provocative but legally meaningless term might mislead or inflame the jury. *Id.* at 5.

For its part, Plaintiff begins by pointing to a letter suggesting that the Air Force *did consider* the project to be "mission critical." ECF 156 at 1, 3 (contracting officer writing in October 18, 2017 letter to Plaintiff that she "cannot stress enough the importance of staying on the plan for this project as the usage of the Taxiway to Pad 5 is *critical to the Air Force's Mission*"). Plaintiff then excerpts the deposition testimony of certain witnesses to demonstrate how they understood and applied the Air Force's "mission critical" labeling. *Id.* at 5-7. Plaintiff insists that the "mission critical" label is probative and not unfairly prejudicial because it "helps to explain why the Air Force refused to soften its position on the construction delivery date—and why Barlovento *leaned into* the work in an effort to complete the Project." *Id.* at 5 (emphasis in original). To the hearsay objection, Plaintiff asserts that Air Force witnesses can competently testify about the designation the Air Force gave to the project and that other witnesses can testify about how that designation informed their own decisions and actions. *Id.* at 8.

In response to the Court's questions at oral argument, counsel for the parties confirmed that "mission critical" is not a term of art in government contracting. ECF 205 at 116, 119. Counsel further agreed that the designation carries with it no legal significance. *Compare id.* at 117-18 (statement of defense counsel) *with* ECF 208-1 (Plaintiff's proposal that jury be instructed that "the term 'mission critical' does not have legal significance or change the express terms of the contracts at issue in this case."). In addition, Plaintiff's counsel conceded that the "mission

critical" designation did not appear in the prime or subcontract documents or the relevant written correspondence between Plaintiff and Defendants.  ECF 205 at 119-20.  Plaintiff's counsel further confirmed that the designation makes no difference in terms of contract administration or the standard by which contracts or subcontracts can be terminated.  *Id.* at 123-24.

Upon concluding its questioning of counsel on this motion, the Court shared its concerns about the "mission critical" designation and expressed its worry that the jury would attach a significance to the designation that the law itself does not attach to it.  *Id.* at 125.  The Court invited Plaintiff's counsel to propose a jury instruction that would purport to define the "mission critical" label and afforded Defendants' counsel an opportunity to object thereto.  Both parties accepted the Court's invitations and filed submissions that clarify and emphasize the positions they briefed and argued earlier.  *See* ECFs 208 (Plaintiff's proposed instruction and brief in support), 210 (Defendants' objection).

## II.   ANALYSIS

After carefully considering the parties' positions, the Court remains manifestly concerned about admitting evidence of the "mission critical" label.  Putting aside for now whether such a term would be offered for its truth or for another reason, the probative value of the label seems marginal, given that it carries no legal significance, does not affect the standards for contract administration or termination, appeared nowhere in any relevant contract document or piece of written correspondence between the parties *in this case*, and is likewise a stranger to the applicable Federal Acquisition Regulation.[2]  On the other hand, the potential for unfair prejudice is palpable.

---

[2] The Court is cognizant of the contracting officer's description of the project as "critical to the Air Force Mission" in her Deficient Performance Letter to Barlovento in October 2017.  *See* ECF 208, Exh. 3.  So far as the Court has been advised, however, this is the first and only project-related document—whether authored by the government, the prime, or the sub—in which the project was described as such.  The Court notes that the letter was issued some seven months after the issuance of the sub-contract.  The Court cannot readily discern from the letter what its author intended to convey by using the "critical to the Air Force's Mission" language in the prosaic manner in which she did, nor whether she was administering the prime contract differently because of it.

To the layperson considering the label in the context of an unspecified Air Force flying mission, "mission critical" may connote urgency, strategic value, and important national security objectives. The Court's concerns about its ability to confine the jury's use of that term to comport with the de minimis significance the law attaches to it remain substantial, Plaintiff's proposed instruction notwithstanding.[3]

The Court recognizes, however, that Plaintiff has argued that its intended use of the "mission critical" designation is entirely legitimate. Although Defendants have branded the effort as a "false narrative," the Court does not have sufficient information to either agree or disagree. Moreover, it would not be the proper role of the trial judge to opine on the truth or falsity of any "narrative," but only the admissibility of evidence relevant to it. To that end, as is sometimes the case with rulings in limine, the Court cannot fully evaluate and decide the admissibility of evidence of the "mission critical" designation—under either Rules 801 or 403—without the actual context that trial will provide. On this issue, the Court needs to consider in real-time the witnesses' testimony and their foundation for the same. Only then, with the evidentiary picture in much sharper relief than it is today, will the Court be fully equipped to resolve the hearsay objection and conduct the nuanced balancing test that Rule 403 commands.

In the meantime, given the potentially disproportionate potency that the "mission critical" designation may exert on the jury to be seated in this case, the Court will order Plaintiff's counsel and its witnesses to refrain entirely from the use of that label in the jury's presence without obtaining at trial the Court's express permission to do so.

---

[3] Because of the manner in which the Court is deciding this Motion, the Court will defer until an instruction conference at trial any final decision on the legal propriety of the proposed instruction.

4

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion is **GRANTED** to the extent that Plaintiff's counsel is required to obtain a ruling outside the jury's presence at trial before eliciting evidence or making argument that the United States Air Force considered the taxiway repaving project in question to be "mission critical."

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*