UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BARLOVENTO, LLC,

    Plaintiff/Counter-Defendant,

v.                                                        Civ. No. 18-1112 GJF/JHR

AUI, INC.,

    Defendant/Counterclaimant, and

WESTERN SURETY COMPANY,

    Defendant.

### ORDER ON PLAINTIFF'S MOTION IN LIMINE # 2
### (ALLEGEDLY IMPROPER BASE COURSE TESTING)

THIS MATTER is before the Court on the above-captioned motion in limine [ECF 132] ("Motion").  The Motion is fully briefed.[1]  The Court held oral argument on October 1, 2020.  *See* ECF 205 (transcript of argument).  For the reasons that follow, the Court will **DENY** the Motion.

In this Motion, Barlovento seeks to forbid AUI from presenting evidence generated after it terminated the parties' Subcontract that "concern[s] allegedly improper 'base course' testing performed by Barlovento and/or its third-party testing agency, Western Technologies, Inc. ('WTI')."  ECF 132 at 1.  Specifically, Barlovento requests that the Court exclude the opinion of geotechnical engineer Robert Prindle that the instruments used by WTI were not properly calibrated and, consequently, the results of the base course testing were invalid and should not have been used to find AUI in default or terminate the subcontract.  *Id.* at 2-3.  At oral argument, Barlovento's counsel agreed that the scope of this Motion is narrow, focused solely on Prindle's after-acquired opinions about WTI's allegedly improper base course testing.  *See* ECF 205 at 28-

---

[1] *See* ECFs 151, 176 (response and reply).

29 (counsel agreeing that motion is confined to Prindle's opinions about instrument calibration and testing validity and that motion does not address any *pre*-termination evidence).

## I. PARTIES' PRIMARY ARGUMENTS

Barlovento advances four primary arguments. First, it alleges that AUI has made a judicial admission that "its base course **could not be placed** in accordance with the requirements of the applicable specification." *Id.* at 2 (emphasis original). The Court should deem AUI bound by its admission and should bar AUI from disavowing its admission or introducing evidence contrary to it. *Id.* at 5-6. Barlovento next asserts that AUI did not sufficiently share with it during the performance period whatever contemporaneous concerns it may have had about the validity of WTI's testing methodologies. *Id.* at 7-10. Not only did AUI fail to share its testing concerns with Barlovento (or AUI's own surety), AUI instead attributed blame for the initial base course failure to "supplier caused" issues. *Id.* at 10. This sequence of events, Barlovento contends, should foreclose AUI from "offer[ing] an alternative explanation for the base course failure at trial that contradicts the contemporaneous record and its own judicial admission." *Id.* at 10.

For its third argument, Barlovento argues that federal law forbids the introduction of evidence to nullify a contract termination when that evidence was beyond the universe of what the terminating party knew or should have known at the time of termination. *Id.* at 11-12. Applying that rule here, Barlovento emphasizes that its personnel neither knew nor should have known of any alleged base course testing errors. Because AUI did not sufficiently raise the issue pre-termination, blamed its suppliers, and indeed abandoned its original base course composition in favor of procuring an entirely new one, Barlovento posits that federal law does not permit AUI belatedly to offer evidence that its initial base course actually met specifications. *Id.* at 12.

Finally, Barlovento claims that AUI did not plead allegations of improper base course testing in its Counterclaim. *Id.* at 12-15. Barlovento asserts that such allegations are required to provide proper notice and their absence from the Counterclaim is fatal to AUI's effort to introduce evidence of flawed testing at trial. *Id.* at 12-13. Barlovento encourages the Court to deny AUI the opportunity to amend its Counterclaim given the age and stage of this litigation. *Id.* at 14-15.

AUI opens its opposition by insisting that the Court has already denied Barlovento the relief it seeks, referencing certain comments made by the Court at the oral argument held earlier this year on the cross-motions for summary judgment and *Daubert* motions. *See* ECF 151 at 3-4. AUI next denies that it made a binding judicial admission that its original base course could not be placed. *Id.* at 4-6. AUI explains that it did not have the luxury of time to pursue its testing-related concerns during the performance period about why its original base course (which had been previously approved by the Air Force) passed 65% of the time but failed 35% of the time. Instead, AUI pivoted to developing and procuring "a new base course submittal pursuant to an Air Force directive." *Id.* at 6. To do otherwise would have risked default and subsequent termination. *Id.* at 5.

To Barlovento's assertion that AUI did not sufficiently share its testing-related concerns during the performance period, AUI points to evidence in the record that it says belies that assertion. *Id.* at 7-11. Chief among this evidence, according to AUI, is Exhibit 6 to Barlovento's own Motion, an October 28, 2017 letter from AUI to Barlovento that included AUI's concerns about potential shortcomings in the testing methodologies being employed by Barlovento's retained testing contractor. ECF 132, Exh. 6 at 1. AUI also brought its concerns directly to WTI itself, after which WTI allegedly modified some aspect of its testing protocol. ECF 151 at 9. AUI contends that Barlovento should not profit by its having turned a blind eye and a deaf ear to AUI's

3

concerns about WTI's testing methodology. In fairness, AUI argues, because there is evidence that Barlovento either knew or should have known of the deficiencies and invalidity of WTI's base course testing, AUI should be permitted to offer evidence of them in the form of engineer Prindle's opinions. *Id.* at 11-12.

Finally, AUI asserts that its Counterclaim already "contains allegations that Barlovento failed to pay AUI for work performed." *Id.* at 12 (citation omitted). Consequently, if the jury finds that the original base course actually did meet specifications, AUI should have been paid for it under the subcontract. *Id.* Furthermore, AUI emphasizes that Barlovento has been on notice of AUI's concerns about base course testing from as early as 2017 and certainly no later than the dates in 2019 on which AUI disclosed Prindle's expert reports. *Id.* at 13. Barlovento cannot claim to be surprised by the emergence of the base course testing issue or AUI's long-standing intent to make it a part of this litigation.

## II. ANALYSIS

### A. AUI Made No Binding Judicial Admission and Barlovento Is Seeking for First Time the Relief Sought in its Motion

The Court begins by clearing away some underbrush: (1) the Court finds that AUI did not make a binding judicial admission that its original base course could not be placed, and (2) the Court further finds that it did not already reject Barlovento's request to bar post-termination evidence of improper base course testing. The Court considers neither to be a close question.

As the cases cited by Barlovento in its Motion make clear, a binding judicial admission requires a party to engage in a "formal act" that "conced[es]" an opponent's factual proposition and thereby "waives or dispenses with the production of evidence." *Int'l Paper Co. v. United States*, 39 Fed. Cl. 478, 482 (1997) (quotation omitted); *Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (observing that such "formal admissions … dispens[e] wholly

4

with the need for proof of the fact" (quotations omitted)); *see also U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (noting that judicial admissions are "formal, deliberate declarations" that are made "for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute" and that statements in briefs "*may* be considered admissions at the court's discretion" (emphasis added) (internal quotation marks and citations omitted)).

In contrast to the deliberate choices made by the litigants in those cases, the single sentence in AUI's brief upon which Barlovento has seized is a horse of a different color. Before parsing the words of that sentence, the Court pauses to point out that AUI from the beginning has litigated this case in part based on the theory that its original base course did *not* constitute a proper basis for default. For example, in its Answer, AUI specifically denied that it failed to place an acceptable base course. ECF 32 at ¶ 18. A few months later, AUI put Barlovento on formal notice of its intent to introduce Prindle's opinions as expert testimony. ECF 53 (Disclosure of Expert Witnesses). In August, September, and October 2019, AUI produced reports by Prindle that *inter alia* catalogued his criticism of WTI's testing methodology. Consequently, the Court struggles to accept that just a few months after these disclosures AUI nonetheless would undo all of this groundwork by burying a judicial admission in a footnote near the end of its response to a summary judgment motion.

The Court has read and re-read the footnote in question. ECF 104 at 21, n.13. As the primary consumer of that written product, the Court understood AUI to be "admitting" only that at some point in the past, *outside* of a courthouse or a litigation context, based on the information then known to it, AUI "acknowledged that its original base course could not be placed in accordance with the specification requirements[.]" *Id.* The footnote goes on to explain that the parties then agreed that AUI could pursue an alternative base course. *Id.* This fact pattern is not

remotely similar to the admissions and procedural postures of the cases relied on by Barlovento. It is enough to say that stating in a document that at another point outside of court a party had acknowledged something is fundamentally different than admitting in court that a fact is true. Accordingly, the Court rejects the argument that AUI has made a binding judicial admission that its original base course could not be placed consistent with the specifications.

Similarly, the Court makes short work of AUI's claim that the Court has already rejected the relief requested by Barlovento in the instant motion. Although AUI submits that the Court took this matter up in the context of addressing Barlovento's *Daubert* motions, the transcript of the hearing refreshes our recollection. *See* ECF 140. At least six times during that hearing, the Court manifested its understanding that Barlovento would be filing a new motion with regard to the relevance of Prindle's testimony and that the Court would wait to decide it until some future point. *See, e.g., id.* at 154:21-25, 158:2-6, 278:7-13, 284:3-5, 297:3-5, 306:11-13. These transcript references make clear that the relief sought by Barlovento has not fallen victim to the law of the case doctrine.

### B. Question of Fact Whether AUI Put Barlovento on Notice of Base Course Testing Concerns Prior to Termination

The parties vigorously dispute whether AUI did enough to alert Barlovento prior to termination of AUI's concerns about WTI's base course testing methodology. Each side can point to record evidence – or the absence thereof – to support its position. For example, it is true that AUI did not share with Barlovento or WTI each and every testing-related concern that its personnel may have expressed in internal emails. It is doubtless also true that AUI did not advert to its concerns about testing either in its response to the Letter of Cure, its response to the Notice of Intent to Terminate, or its December 29, 2017 letter responding to the termination. It is also

undeniable that AUI at certain points identified its suppliers as the cause of its struggles to place an acceptable base course.

On the other hand, AUI gains traction for its position that it sufficiently "raised its hand" by pointing to the October 28, 2017 letter it wrote to Barlovento and by interceding directly with WTI about its testing concerns. In addition, there is evidence that AUI also alerted Barlovento to its concerns about incoherent results generated by WTI's testing of subgrade samples. *See* ECF 205 at 49-51. Evidence that Barlovento, notwithstanding this notice, opted for its own reasons not to check into AUI's testing concerns may permit the jury to draw the inference that Barlovento "should have known" of the alleged flaws in WTI's testing methodology prior to its decision to terminate AUI's subcontract.

On a motion in limine, it is not the Court's place to select between the parties' competing versions of what AUI said or should have said or what Barlovento knew or should have known about the validity of WTI's base course testing. The evidence submitted by the parties demonstrates that these issues are in hot dispute. Consequently, the questions of whether AUI did enough to alert Barlovento to the testing concerns and whether Barlovento did enough in response to AUI's outreach fall squarely into the universe of questions on which reasonable minds may differ. A factual context as unsettled as this one counsels the Court to send this evidence to the jury to weigh and sift as its members see fit.

### C. Federal Law Permits Evidence of Information that Terminating Party Should Have Known at Time of Termination

The Court emphasizes that the parties agree on the relevant legal standard. In its Motion, Barlovento set forth the general rule in government-related contracts that the post hoc review of a contract termination is confined to the information the terminating party either knew or should have known at the time of termination. *See* ECF 11-12 (citing cases); *see also* ECF 205 at 30

(Barlovento's counsel affirming the "knew or should have known" standard). At oral argument, AUI's counsel agreed with that legal principle. *Id.* at 53-54. Thus, the Court observes that Barlovento and AUI agreed to the Subcontract's default and termination provisions, *see* Subcontract ¶¶ 8.1-8.2, further agreed that the federal law of government contracts would control the "validity, interpretation and performance" of the subcontract, *see id.* ¶¶ 10.8, and have now agreed on the application of a doctrine of federal case law to the judicial review of the termination of the Subcontract. The Court's sole task, therefore, is to straightforwardly apply the parties' agreed-upon rule.[2]

In the preceding section of this decision, the Court summarized the evidentiary dispute surrounding what Barlovento knew or should have known about the validity of WTI's testing methodology at the time that Barlovento terminated AUI's Subcontract. The Court agrees that AUI *arguably* has evidence to demonstrate that (1) had Barlovento reasonably responded to rather than brushed off the testing concerns that AUI raised with it and (2) had Barlovento conducted a reasonable inquiry into whether its own handpicked testing agency was reliably performing the testing, then (3) Barlovento would have known that WTI was improperly using uncalibrated instruments that rendered its testing results unreliable, thereby depriving the Air Force of any reason to order the removal of a base course it had previously approved (and that met specification at least 65% of the time) and depriving Barlovento of any reason to find AUI in default for a base course failure. The Court further agrees that AUI can argue that the express duties of cooperation, good faith, and fair dealing each party owed the other under the Subcontract did not permit

---

[2] Whether the Court in the first instance would have applied a doctrine derived solely from the FAR's termination provisions to a subcontract featuring a non-FAR-based and meaningfully different termination provision is a question the parties' agreement has relieved the Court of deciding. The Court now has no occasion to analyze whether the plain language of ¶ 8.2.2 suggested a broader universe of relevant information than that referred to in the *McDonnell Douglas* and *Gilbane* decisions on which Barlovento relies.

Barlovento to passively shield itself from confirming or dispelling whether its own testing agency was employing an unreliable testing methodology. The Court offers no view of the strength of these arguments, but only concludes that they are arguments the record evidence allows AUI to make.

Therefore, in its discretion, the Court will permit AUI to introduce Prindle's opinions about WTI's base course testing in support of its theory that the testing flaws he describes "should have been known" to Barlovento prior to its decision to terminate.[3] The Court finds that there is sufficient (albeit disputed) evidence in the record to permit the inference that – at the time of termination – Barlovento personnel either knew or should have known of the potential invalidity of WTI's testing methodology. The Court will commit to the jury the decision whether to draw that inference.

### D. AUI's Counterclaim and Other Sources Provided Barlovento with Sufficient Notice of Base Course Testing Issue

The Court construes Barlovento's criticism of the manner in which AUI has pleaded its Counterclaim as a complaint about unfair surprise. On this score, the Court agrees with AUI that, from essentially the outset of its involvement in this litigation, AUI has highlighted its disagreement with Barlovento's assessment that AUI failed to place an acceptable base course. And for well more than a year, including some ten months before the first trial date in this case, AUI had given Barlovento specific notice of its intent to offer engineer Prindle's opinions about WTI's base course testing. Barlovento received all of Prindle's reports, deposed him, and has never complained about the scope or completeness of the discovery related to his opinions. The

---

[3] At oral argument, the Court took this motion under advisement, but shared its "strong inclination" to foreclose Prindle's opinions as the Court worried that they ran afoul of the "knew or should have known" doctrine. ECF 205 at 63-65. Additional study of the party's written and oral arguments, relevant legal authorities, and the full scope of the evidence submitted to the Court, however, has given the Court a deeper understanding of the issues embedded in the Motion and led it to a different conclusion.

Court concludes from the record and all the relevant evidence that AUI's Counterclaim sufficiently put Barlovento on notice that AUI would seek payment for the original base course if the jury concludes that it actually met specifications. The Court accordingly rejects Barlovento's notice-related concerns as a reason to grant the instant Motion.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's MIL #2 is **DENIED.**

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*