UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BARLOVENTO, LLC,

    Plaintiff,

v.                                                                                         Civ. No. 18-1112 GJF/JHR

AUI, INC., *et al.*,

    Defendants.

## ORDER ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE OPINIONS, REPORTS, AND TESTIMONY OF TIMOTHY J. MARTIN AND BEN BIRCH

THIS MATTER is before the Court upon the above-captioned motion in limine [ECF 91] ("Motion"). The Motion is fully briefed.[1] The Court heard argument on February 12, 2020. *See* ECF 140 at 291-294, 301 (transcript of argument on this motion). For the reasons that follow, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.   BACKGROUND**

Defendant AUI[2] has identified Timothy Martin and Ben Birch as expert witnesses to testify at trial about issues relating to the concrete placement phase of the taxiway construction project at issue in this contract dispute. These witnesses jointly prepared a total of five reports in this case, including an original report and a series of four subsequent reports that purported to rebut opinions rendered by Barlovento's own witnesses. ECF 103 at 4-5. Most relevant to the instant Motion, Martin and Birch are expected to testify about the possible reasons why the third concrete test lane failed, as well as important differences between the conditions under which Barlovento required

---

[1] *See* ECFs 103, 112 (response and reply).

[2] The Court recognizes that both Defendants named in this lawsuit have joined in opposition to the instant Motion. Nonetheless, for ease of reference, the Court will use the familiar names of only the parties to the Subcontract at issue in this case.

AUI to perform the concrete phase compared to those under which Barlovento required its follow-on subcontractor to perform the same phase. ECFs 91 at 3-4; 91-1 (Original Report of Martin and Birch) at 12-13; 103 at 4, 8-9. After analyzing all documents and data provided to them or assembled by them, these witnesses have theorized that the third test lane likely failed because of the presence of a particular substance in the concrete mix itself. Martin and Birch are prepared to testify that this substance, an "admixture" called Recover, was part of the composition of the concrete that AUI poured only because of the distance the concrete had to travel from the remote batch plant where it was prepared to the site of the test pour. *See* ECF 91-1 at 12. According to these witnesses, the presence of the admixture affected the hyrdration of the concrete and likely led to the emergence of a phenomenon known as "edge slump" several hours after what appeared to be a successful pour. *Id.* The witnesses are further prepared to opine that, had AUI been granted an on-site batch plant (as its successor, Southwest Concrete Paving Company ("SWCPC") enjoyed), the resulting proximity would have alleviated the need for the admixture and (presumably) eliminated its adverse effect on the hydration of the concrete. *Id.*

In the instant Motion, Barlovento has requested that the Court exclude in their entirety the witnesses' reports, opinions, and testimony. ECF 91 at 1.

## II. LAW

Under the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if four conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In applying this standard, the court must "first decide whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (quoting Rule 702). Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."  *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Nacchio*, 555 F.3d at 1241 (stating that "the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact" (internal quotations marks omitted)).

### III.  BARLOVENTO'S OBJECTIONS

Barlovento makes four specific challenges to the admissibility of the reports and testimony of Martin and Birch:

A. Their theoretical explanation for why the third concrete test lane failed violates Federal Rule of Evidence 702 because it is unreliable, untested, and not supported in the scientific community.  ECF 91 at 1, 7-10.

B. Their reports offer improper legal conclusions purporting to interpret the parties' Subcontract as well as Barlovento's follow-on subcontract with SWCPC. *Id.* at 1, 10-14.

C. Their reports improperly include factual summaries that are unhelpful to the trier of fact and include acknowledged mistakes.  *Id.* at 2, 15-18.

3

D. Their reports are based on inadmissible hearsay and include under the guise of opinions certain statements of disputed facts relayed to them by AUI personnel. *Id.* at 2, 18-20.

## IV.  ANALYSIS[3]

After ample consideration of the parties' briefs, attached exhibits, relevant legal authorities, and the transcript of the motion hearing, the Court addresses each objection as follows:

### A. Cause of Third Test Strip Failure

The Court will deny Barlovento's objection to the witnesses' theorizing about the actual cause of the failure of the third test strip. As the Court commented at the February motion hearing, the jury could benefit from an education about how concrete mixtures affect the way that concrete performs. ECF 140 at 301. The Court further suggested that the witnesses could testify about the factual differences between the concrete mix that AUI used with the third test lane and that used by its successor. *Id.* at 302. With the benefit of additional study and a deeper understanding of the issues in this case, the Court is confident that Martin and Birch are qualified to educate the jury about significant aspects of concrete and the various physical, mechanical, and environmental factors that affect its performance.

All in this case appear to agree that AUI's third test lane failed because of edge slump. All apparently further agree that SWCPC's test lane(s) passed. There also does not appear to be any dispute that AUI's concrete had Recover in it, whereas SWCPC's concrete did not. And all agree that AUI used a remote batch plant while SWCPC availed itself of one that was on-site. A question the jury will be asked to consider is: why did AUI's test lane fail, whereas SWCPC's passed? A related question is why AUI's third test lane – which Barlovento's own Project Manager, Dave

---

[3] As an initial matter, to the extent that Barlovento objects to the admission into evidence of the reports themselves, the Court sustains the objection, just as it did with the reports prepared by Robert Prindle and Robert Freas. *See* ECF 217 at 2 n.3 (excluding Prindle report from evidence absent Barlovento opening door to its admission), ECF 218 at 3 n.3 (same for Freas report).

Beuzekom, described on the night of the pour as "successful," ECF 91-1 at 12 – only failed due to the emergence of edge slump several hours later.[4]  There are only a finite number of possible answers to these questions.  Was it the competence of the paving crew using a slip-form paver?  Was the failure instead attributable to the concrete mix itself, putting aside for now the question of which party was responsible for the concrete mix?  Was it some combination?

The Court is not surprised that the parties in this case have retained their own experts whose opinions as to the answers to these questions are in pointed disagreement.  Nonetheless, the Court believes that Martin and Birch can be helpful to the jury by discussing the various factors that *potentially* affect the performance of concrete, both in the abstract as well as with respect to this particular test lane. Although the witnesses admitted that they are unaware of any scholarly or peer-reviewed research that might tend to validate their theory, the Court considers that a point to be made on cross-examination and in final argument.  On balance, taking into account all relevant information, the Court believes that the witnesses' opinion as to the *likely* (though not definitive) cause of the failure of the third test lane is reliable and rigorous enough under Rule 702 to be admitted for the jury's consideration.  Although apparently new and not yet tested, the witnesses' opinion does not strike the Court as "junk science" any more than the opinion of Barlovento's expert Dr. Basham that the concrete mixture was *not* the cause of the edge slump.  For these reasons, the Court will deny the Motion to the extent it seeks exclusion of this opinion by Martin and Birch.[5]

---

[4] The Court recognizes that the parties dispute whether the third test lane was "successfully" poured.  *Compare* ECFs 103 at 8-9; 103-1 at 4-5 (AUI asserting that the test lane "seemed to be place perfectly" and referencing Beuzekom's October 2017 letter describing the test lane as "successfully placed") *with* ECF 112 at 5 (Barlovento disputing this assertion and referencing the Air Force's conclusion that the test lane "[did] not meet the edge slump criteria" and correspondence asserting that "AUI ha[d] not demonstrated a proficiency of using the slipform technique" (citing ECFs 112-2, 112-3)).

[5] In support of its request for exclusion of the witnesses' opinion as to the likely cause of the edge slump, Barlovento cited *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.* 565 F.3d 769, 775, 780-81 (10th Cir. 2009).  ECF 91 at 10.

### B. Legal Conclusions

As to Barlovento's criticism that the witnesses' reports offer improper legal conclusions purporting to interpret the parties' Subcontract as well as Barlovento's subcontract with SWCPC, the Court views the matter differently. To be sure, as the Court has reasoned with respect to Messrs. Prindle and Freas, the Court will not permit Martin or Birch to offer legal conclusions or legal opinions, for they lack a sufficient foundation to do so. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 833 (10th Cir. 2016) (observing that "[t]he proper construction of a contract . . . is a question of law" (internal quotation marks omitted)); *United States v. Richter*, 796 F.3d 1173, 1195-96 (10th Cir. 2015) (explaining that expert testimony may not "interfere[] with the function of the judge in instructing the jury on the law" or "state legal conclusions drawn by applying the law to the facts" (internal quotation marks omitted)). But the Court is again not convinced that AUI will actually attempt to elicit from either Martin or Birch any opinions about what any contractual language means or how the jury should interpret it.

On the specific subject of whether Barlovento held AUI to a "higher standard" than it did SWCPC, the Court disagrees that is a *legal* conclusion. Instead, the Court understands the witnesses to be confining their opinions to the differences in engineering standards or technical standards. Viewed in that way, these witnesses are well-positioned to help the jury understand whatever engineering or technical differences there might have been in Barlovento's approach with AUI and SWCPC. The same goes for the witnesses' testimony about which entity approved or disapproved an on-site batch plant. That testimony does not require the witnesses to make a

---

Barlovento represented that the case involved the court of appeals "upholding *exclusion* of expert opinions concerning novel scientific methods as unreliable under the *Daubert* standard[.]" *Id.* (emphasis added). But that case actually featured a district court *admitting* the disputed opinions but then deciding as the factfinder not to accord them much weight. *See Attorney Gen. of Oklahoma*, 565 F.3d at 780-81 (finding no abuse of discretion when the district court "both admit[ed] the [expert] testimony and subsequently [found] it unreliable").

*legal* conclusion but only to state a matter of fact. With respect to any other objection based on the witnesses offering allegedly improper legal conclusions, the Court in its discretion will wait until the witness testifies – when the Court can hear the colloquy between lawyer and witness – because only then will the Court be certain that the witness is actually offering a *legal* conclusion or opinion instead of testifying as to *factual* matters informed by his experience, education, and training.[6]

### C. Factual Summaries

The Court turns next to Barlovento's objection that the witnesses' reports improperly include factual summaries that are unhelpful to the trier of fact and include acknowledged mistakes. Apart from excluding from evidence the reports themselves, the Court finds itself without sufficient information at this point to grant Barlovento any additional relief. The Court simply cannot discern in the abstract whether and how much the witnesses' *admissible* opinions are based on certain documents in the case or certain facts they are assuming to be true. After all, it is perfectly acceptable for expert witnesses to base their testimony on such documents and even to assume that certain facts are true, so long as their reliance is consistent with what is ordinarily done by experts in their field.

The Court agrees with Barlovento that a witness testifying under Rule 702 cannot be used simply to bolster the credibility of other fact witnesses or suggest to the jury how it should weigh certain evidence (or decide the overall case). But the Court also recognizes that such a witness must be permitted at least some amount of summarizing of the facts to bring his or her opinions into context. In advance of trial, however, and without the context of opening statements and

---

[6] The Court emphasizes that Barlovento retains its right to object to any question or any answer on any basis, whether premised on Rule 702, Rule 401, Rule 403, or otherwise, and to request limiting instructions as appropriate.

7

Barlovento's case-in-chief, it is difficult for the Court to predict the ebb-and-flow of Martin and Birch's testimony. It may be that their opinions require some scene-setting, including some reasonable summary of evidence the jury has already heard. While some of that is necessary to aid in the jury's understanding of their testimony, too much of it risks essentially permitting them to be used as summary mouthpieces to make a closing argument for the party that hired them. Accordingly, the Court deems it prudent to wait until trial at which time the Court will be better prepared to evaluate the witnesses' actual testimony and decide contemporaneous objections made thereto. As with the other expert witnesses to whose testimony Barlovento has objected, the Court will give Barlovento plenty of leeway to cross-examine Martin and Birch.

### D. Alleged Hearsay

In its final objection, Barlovento asserts that the witnesses' reports are based on inadmissible hearsay and include under the guise of opinions certain statements of disputed facts relayed to them by AUI personnel. Barlovento identifies four specific opinions that it says were conveyed to the witnesses by AUI personnel for inclusion in their opinions and reports:

(1) "Barlovento assumed control over the mixture proportions and did not allow for AUI's alterations during test placements that may have led to a viable mixture."

(2) "Barlovento made changes to the mixture and executed a new mixture proportioning study without informing AUI of the identified problems."

(3) "AUI was not afforded the opportunity to make changes to the mixture that were ultimately needed for a successful placement."

(4) "Barlovento did not inform AUI that Barlovento's original mixture design was identified as flawed, and in fact hid that information from AUI."

ECF 91 at 19 (quoting ECF 91-1 at 11-13). Barlovento contends that these opinions are based on inadmissible hearsay and are "just regurgitations of AUI's obviously biased assessment of its performance on the Project." *Id.* at 18.

The Court will sustain Barlovento's objection. There is nothing about any of the four disputed opinions that has any effect on – or is in any way affected by – the technical or engineering opinions to be rendered by Martin and Birch. The reason why the Court is admitting their testimony is to educate the jury about concrete and how its performance is affected by physical, mechanical, and environmental factors. These witnesses do *not* have the foundation to render reliable opinions about simple facts that took place long before the witnesses were retained. For these witnesses to have opinions about such pedestrian factual matters is improper under Rule 702 and also runs afoul of Rule 403. There is simply nothing about the witnesses' analysis of these factual disputes that can be helpful to the jury. These witnesses are in no better position – and indeed in a much worse position – than AUI's own personnel fact witnesses to offer this evidence. Consequently, the Court will forbid Martin and Birch from testifying as to any of the four opinions enumerated above.

## V.   CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion [ECF 91] is **GRANTED IN PART AND DENIED IN PART** as explained in this Order.

                                             THE HONORABLE GREGORY J. FOURATT
                                             UNITED STATES MAGISTRATE JUDGE
                                             *Presiding by Consent*