UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BARLOVENTO, LLC,

    Plaintiff/Counter-Defendant,

v.                                                                         Civ. No. 18-1112 GJF/JHR

AUI, INC.,

    Defendant/Counterclaimant, and

WESTERN SURETY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT
WESTERN SURETY'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court upon Defendant Western Surety Company's "Motion for Summary Judgment on Count II of Barlovento's Complaint" [ECFs 84-85] ("Motion"). The Motion is fully briefed.[1] On February 12, 2020, the Court heard oral argument and **DENIED** this Motion from the bench. *See* ECF 140 at 305 (Court: "Western Surety's Motion is denied on all grounds."). To further explain and memorialize this ruling, the Court now issues the following decision.

**I.  BACKGROUND**

On March 24, 2017, one week after Barlovento hired Defendant AUI, Inc. under a $3.7 million Subcontract to replace a 2,225-foot taxiway at Kirtland Air Force Base, AUI entered into a "Performance Bond" contract with Western Surety. The purpose of this Performance Bond was to guarantee that AUI would perform the Subcontract. Consequently, the Performance Bond required Western Surety, upon AUI's "failure to promptly and faithfully perform the

---

[1] *See* ECFs 98, 110 (response and reply).

[Subcontract]," to "promptly remedy the default," "[c]omplete the [Subcontract]," or provide Barlovento with a new contractor to complete the work. *See* ECF 85-1 at 2.

After the construction project began, the Air Force answered Barlovento's formal "Request for Information" by stating that the concrete pavement thickness was increased from 12 to 16 inches. Although the formal contract modification between the Air Force and Barlovento ("Mod 2") was not executed until after AUI was terminated, AUI nevertheless placed three test lanes at this new thickness. Unfortunately, none of these test lanes met the required specifications, and when Barlovento issued its "Letter of Cure" to AUI on October 31, 2017, Barlovento specifically listed this failure as one of three "deficiencies" that could result in AUI's termination.

On December 5, 2017, Barlovento terminated the Subcontract with AUI. A few hours before doing so, Barlovento's counsel notified Western Surety of the impending termination, in response to which Western Surety apparently offered to "tender a completion contractor" once Barlovento "obtain[ed] a few competitive bids for completion of AUI's contract." ECF 85-22 (memorandum of Western Surety's Claims Consultant, Lisa C. Desantis). Western Surety claims, however, that Barlovento's counsel stated that Barlovento "already ha[d] a completion contractor," "[did not] have time to wait for [Western] Surety's process," and "intend[ed] on moving forward with [Barlovento's] completion contractor." *Id.*; ECF 98-10 at 2. A week later, Barlovento indeed hired this replacement subcontractor, Southwest Concrete Paving Company (SWCPC), which eventually completed the project in late June 2018. *See* ECF 88-1 at 18-19. The summary judgment record is devoid of any evidence that Western Surety undertook to locate a replacement contractor, solicit bids for the completion of the project, or so much as visit the project site. The record is similarly devoid of any evidence of how much Western Surety would have paid for the

completion of the remaining portion of AUI's Subcontract and how that amount compared to what Barlovento paid SWCPC to finish the job.

## II.  PARTIES' PRIMARY ARGUMENTS

Western Surety asserts that its Performance Bond obligations were discharged for either of two reasons.  First, Western Surety contends that the four-inch (or 33 1/3 percent) increase in concrete thickness "materially changed" the Subcontract without Western Surety's consent.  ECF 85 at 2, 7-11.  Second, Western Surety argues that Barlovento "abridged" or "precluded" Western Surety from performing its bond obligation to tender a completion contractor.  ECF 85 at 2, 6-7, 11-13.

Barlovento, on the other hand, responds that the Court on summary judgment review should not conclude that Western Surety's performance bond obligations were discharged on either ground.  *See* ECF 98 at 16-20 (arguing, *inter alia*, that Western Surety (1) effectively consented in advance to (i.e., waived) such a change and (2) was not abridged or precluded from tendering a completion contractor).

## III.  LAW

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material when it "might affect the outcome of the suit under the governing [substantive] law," and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U. S. 253, 289 (1968) (the question at summary judgment is whether a jury should "resolve the parties' differing versions of the truth at trial"). In evaluating such a motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Discharge of a Surety

Under the federal law of government contracts,[2] "[w]here, *without the surety's consent*, the principal and the [obligee] modify their contract" the surety's obligations may be discharged. *Nat'l Sur. Corp. v. United States*, 118 F.3d 1542, 1544 (Fed. Cir. 1997) (emphasis added) (quotation marks omitted).

"If the [surety] tenders complete or partial performance of the [surety's] obligation and … the obligee *unreasonably* refuses such tender; the [surety's] obligation is discharged to the extent that refusal of such tender causes the [surety] a loss." Restatement (Third) of Suretyship and Guaranty § 46(2) (1996) (emphasis added); *see also id.* at cmt. a (defining a "tender" as "a valid and sufficient offer of performance," i.e., one that is "to the proper person at the proper time and

---

[2] The Performance Bond is "governed in accordance with the federal law of government contracts" and, "[t]o the extent that the federal law of government contracts is not dispositive, the laws of the State of New Mexico," Subcontract at ¶ 10.8. ECF 202 at 5-9 (holding that the Performance Bond incorporates the Subcontract, including its choice-of-law provision); *see also MACTEC, Inc. v. Bechtel Jacobs Co., LLC*, 346 F. App'x. 59, 83 (6th Cir. 2009) (unpublished) (citing cases from the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims as sources for "the federal law of government contracts"); *Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 277 & n.3 (11th Cir. 1988) (citing to what is now the United States Court of Federal Claims as a source of "the federal law of government contracts").

[is] unconditional"); *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1314 (Fed. Cir. 2011) (relying solely on the Restatement (Third) of Suretyship and Guaranty as the source of law to establish that a surety's performance bond also creates an "affirmative cause of action [by the surety] for impairment of suretyship" and acknowledging this Restatement as the sole source for the corresponding "rules discharging the [surety] from liability"); *Hartford Fire Ins. Co. v. United States*, 254 F. Supp. 3d 1333, 1353-67, 1353 n.38 (Ct. Intl. Trade 2017) (observing that "the Federal law of Government contracts dovetails precisely with general principles of contract law" and expressly following its precedent of "referr[ing] to the Restatement [Third] of Suretyship in determining the rights and obligations of parties").

Even if a formal "tender" of performance has not been made, "[i]f … the obligee [otherwise] impairs the [surety's] right [to perform its obligation], the [surety] is discharged from its duties pursuant to the [surety's] obligation to the extent that such impairment would otherwise cause the [surety] a loss." Restatement (Third) of Suretyship and Guaranty §§ 26, 44. In other words, although "the obligee and the surety are not [necessarily] in privity of contract," *Lumbermens*, 654 F.3d at 1311 n.2, the obligee nevertheless cannot "hinder … the [surety] in performance of the contract." *Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 675 (Fed. Cl. 2010) (quoting *Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed. Cir. 2000)); *see also Sanders v. FedEx Ground Package Sys.*, 188 P.3d 1200, 1203 (N.M. 2008) (observing that "'interference with or failure to cooperate in the other party's performance' constitute[s] bad faith" (quoting Restatement (Second) of Contracts § 205 cmt. (1981))).[3]

---

[3] Western Surety suggests that any such unreasonable refusal or impairment *completely* "release[s] the surety from its obligations under the bond," ECF 85 at 13—as opposed to merely releasing the surety "to the extent," Restatement (Third) of Suretyship and Guaranty §§ 44, 46(2), of the resulting loss. But the cases that Western Surety cites for such a proposition do not—*in any way*—rely on the federal law of government contracts (e.g., the Restatement (Third) of Suretyship and Guaranty or cases from the Federal Circuit or Court of Federal Claims), or "[t]o the extent that the federal law of government contracts is not dispositive, the laws of the State of New Mexico," Subcontract at ¶ 10.8. *See* ECF 85 at 12-13 (citing *St. Paul Fire & Marine Ins. Co. v. Green River*, 93 F. Supp. 2d 1170, 1178-79 (D. Wyo.

**IV. ANALYSIS**

    **A. Western Surety Consented to Subcontract Modifications**

In a recent decision, the Court expressly resolved the first issue raised in Western Surety's Motion. In deciding Barlovento's fifth motion *in limine* [ECF 137], this Court held that "[t]o the extent that the Subcontract was modified … Western Surety *consented* to any such modification." ECF 220 (Order on Barlovento's Motion in Limine # 5) at 8-10 (emphasis added) (observing that "Western Surety expressly agreed to incorporate and guarantee the performance of a Subcontract that—by its *own* terms—permitted *any* changes to its own scope of work, all without 'releas[ing] or discharg[ing] *to any extent whatsoever* [Western Surety]'" (emphasis and brackets in original) (quoting Subcontract ¶ 11.4.4)). Consequently, for the same reasons, the Court will **DENY** the portion of Western Surety's Motion that requests a finding that its Performance Bond obligations were discharged due to a non-consented-to material change in the Subcontract [ECF 85 at 9-11].

    **B. Genuine Factual Disputes Prevent the Court from Deciding as a Matter of Law Whether Barlovento Precluded Western Surety's Performance Obligation**

As to the second issue raised in Western Surety' Motion, the Court remains mindful that it must "view the facts and draw reasonable inferences in the light most favorable to [Barlovento]." *Scott*, 550 U.S. at 378. In doing so, the Court discerns genuine disputes of material fact as to whether Barlovento unreasonably refused or otherwise impaired Western Surety's tender of performance of its bond obligation. Western Surety, for example, presents evidence that, on the day AUI was terminated, Western Surety's representative offered to "tender a completion

---

2000), *aff'd* 6 F. App'x 828 (10th Cir. 2001) (stating that "depriv[ing] a surety of its ability to protect itself … renders the bond null and void"—but relying on cases that involved Connecticut, Florida, and Illinois law in order to ascertain and apply Wyoming law); *St. Paul Fire & Marine Ins. Co. v. VDE Corp.*, 603 F.3d 119, 125 (1st Cir. 2010) (relying on *Green River* in ascertaining and applying Puerto Rico law); *Fidelity & Deposit Co. of Maryland v. Jefferson County Comm'n*, 756F. Supp. 2d 1329, 1336 (N.D. Ala. 2010) (relying on *Green River* in ascertaining and applying Alabama law)).

contractor" once Barlovento obtained a few bids—but that Barlovento's counsel responded that Barlovento already *had* a completion contractor and would not wait for Western Surety's process. ECFs 85 at 6-7; 85-22 at 1.  Barlovento, however, presents evidence that Western Surety nonetheless had the opportunity to perform its bond obligations but simply chose not to and continued to investigate the matter with Barlovento's assistance without ever notifying Barlovento of its apparent belief that its obligations had already been discharged.  ECF 98 at 10-11, 18-20 (also citing evidence that Western Surety took no further action to carry out its obligation); ECF 140 at 258 (Western Surety's counsel confirming that there was not "anything that [would have] stopped [its representative] from soliciting bids even after Barlovento picked [SWCPC] as the replacement"); *see also* ECFs 85, 98, 110 (containing no evidence that Western Surety suffered a loss due to SWCPC's completion of the work, e.g., due to the cost of SWCPC's work exceeding the cost of a completion contractor that Western Surety would have tendered).

In light of these factual disputes, the Court will permit the jury to determine whether Barlovento unreasonably refused or otherwise impaired Western Surety's tender of performance of its bond obligation.  *See also* ECF 140 at 240-62, 267-77, 305 (the Court discussing Western Surety's interactions with Barlovento and concluding that whether Barlovento "truly prevented Western Surety from carrying out its duties … [involved] genuine issues of material fact").  The Court will thus **DENY** the portion of the instant Motion that requests a finding that Barlovento precluded, or "abridged," Western Surety from performing its bond obligations [ECF 85 at 11-13].

**IT IS THEREFORE ORDERED** that Western Surety's Motion is **DENIED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*